UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>YIMING WANG, )<br> )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>XINYI LIU, YUANLONG HUANG, )<br>ZHAONAN WANG,  BLING )<br>ENTERTAINMENT, LLC, SHENGXI )<br>TINA TIAN, and MT LAW, LLC, )<br> )<br>  Defendants. )<br>_____) | No. 1:16-cv-12581-DJC |

## FIRST AMENDED COMPLAINT

## INTRODUCTION

1.      Plaintiff Yiming Wang ("Yiming") brings this action for damages sustained as a result of the Defendants' wrongdoing in connection with the formation and operation of Defendant Bling Entertainment, LLC ("Bling" or the "Company").  Defendants Xinyi Liu ("Ms. Liu"), Yuanlong Huang ("Mr. Huang") and Zhaonan Wang ("Mr. Wang") (collectively referred to as "Bling Defendants") are the promoters, managers, and controlling members of the Company, supposedly formed to develop and operate a luxurious, state-of-the-art bar and karaoke facility in Malden, Massachusetts.  The Bling Defendants fraudulently induced Yiming into investing $1 million into Bling as part of the federal government's EB-5 Immigrant Investor Program (the "EB-5 Program").

2.      Defendant Shengxi Tina Tian ("Ms. Tian") and her law firm, MT Law, LLC (the "Law Firm") (Ms. Tian and the Law Firm together referred to as the "Attorney Defendants") served as Yiming's immigration counsel in connection with his investment into Bling and his

1

attempt to secure a visa through the EB-5 Program, but was at all times beholden to the Bling

Defendants and, as a result, failed to act in accordance with her professional obligations to

Yiming.

   3. The material misrepresentations by the Bling Defendants include materially false

oral and written representations to him concerning the Company's financial condition, the

amount and source of other investments, the identity and true status of fellow EB-5 investors, the

Project's status and expected returns, and the prospect of potential new investors for the purposes

of inducing him to invest.  Once Yiming did invest, the Bling Defendants continued their

fraudulent scheme by fabricating and providing knowingly false documents to Yiming to file

with the United States Customs and Immigration Services Department for the sole purpose of

preventing the Company from having to return his $1 million investment, and have unlawfully

used Company funds for their own personal expenses.

   4. The Attorney Defendants were at all material times preparing Bling's tax returns

and performing other accounting functions for the Company while purportedly representing

Yiming.  They knew about the Bling Defendants' fraudulent operations and misstatements,

attempted to secure additional investors for Bling, and yet continued to guide him through the

EB-5 Program without ever acting in his interest.

   5. The karaoke facility that was supposed to be completed in December 2014 is not

even close to complete, the supposed budget has doubled, and the Bling Defendants have

demanded that Yiming invest more money and sign a liability release as a condition of the

project's continuance.

## PARTIES

6.      Yiming is a natural person who resides in Florida.  He owns a 5% interest in Bling.

7.      Ms. Liu is a natural person who, upon information and belief, resides at 5 Patty Lee Lane, Dedham, Massachusetts.  She is one of the original members of Bling, is currently serving as its co-manager, and continues to be its largest membership interest holder.

8.      Mr. Huang is a natural person who, upon information and belief, resides at 5 Patty Lee Lane, Dedham, Massachusetts.  Mr. Huang and Ms. Liu are husband and wife.  Although Mr. Huang was not an original member of Bling or formally designated as the Company's manager in the corporate documents filed with the Secretary of State, Mr. Huang was Bling's *de facto* manager from the beginning of the Project and was identified as such on the Company's June 2014 business plan.  *See* Exhibit A, p. 60 ("Mr. Huang is serving as Bling's General Manager until the hiring phase, when a General Manager will be selected").  Mr. Huang was formally appointed as Bling's co-manager with Ms. Liu in 2015.

9.      Mr. Wang is a natural person who, upon information and belief, resides at 360 Revere Beach Boulevard, Apartment 416, Revere, Massachusetts.  Mr. Wang is a cousin of Ms. Liu and Mr. Huang and is the second largest membership interest holder in Bling.

10.      Bling is a Massachusetts limited liability company with its principal place of business located at 46 Pleasant Street, Malden, Massachusetts.

11.      Ms. Tian is a natural person who resides, upon information and belief, at 21 Nichols Road, Lexington, Massachusetts.  She is an attorney licensed to practice in the Commonwealth of Massachusetts.

12.     The Law Firm is a Massachusetts limited liability company with a principal place of business located at 430 Bedford Street, Suite 200, Lexington, Massachusetts.  Ms. Tian is the Law Firm's Manager and, upon information and belief, its sole or primary owner.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it arises under federal law and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as they all arise from the same transaction or occurrence.

14.     The Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in dispute exceeds $75,000.

15.     The Court has personal jurisdiction over Defendants because they all work, reside, or have their principal place of business in the Commonwealth of Massachusetts.

16.     Venue is appropriate in this Court because the tortious acts occurred in Malden and Lexington, Middlesex County, Massachusetts.

## FACTS

17.     In June 2013, Ms. Liu, Mr. Wang, and two other individuals, Xuan Xu and Yuefu He[1], formed Bling for the stated purpose of developing and operating a luxurious, state-of-the-art bar, karaoke, and restaurant facility in Malden, Massachusetts (the "Project").  The Project was going to be marketed to young Chinese-Americans, where interest in karaoke is very high.

18.     Ms. Liu was formally appointed as the Company's manager.

19.     Although Mr. Huang was not a formal member of Bling or identified in corporate documents filed with the Secretary of State as the Company's manager, he was acting as Bling's

---

[1] Mr. He and Ms. Xu are no longer affiliated with Bling and are not parties to this action.

4

*de facto* manager by running the day-to-day operations of the Company at the time that Yiming made his investment and was identified as such on the Company's June 2014 business plan. *See* Exhibit A, p. 60.  Mr. Huang was later formally added as the Company's co-manager in 2015.

20.     In 2014, Yiming, a 27-year old Chinese citizen, sought to obtain a green card for him and his wife, Yumei Zhang, through the United States Customs and Immigration Services ("USCIS") EB-5 Program.  The EB-5 Program requires that an applicant invest at least $1 million into an eligible business that is designed to promote job growth in the targeted area, and take an active management role with the business.

21.     It was important to Yiming that he invest in a company that was on strong financial footing and that would have as fellow members other investors who, like him, were participating in the EB-5 Program.

22.     Through a mutual acquaintance, Mr. Wang learned that Yiming was looking for an EB-5 investment, and identified him as a potential investor in Bling.

23.     Upon information and belief based on conversations Yiming had with Mr. Wang, Mr. Wang discussed Yiming's potential investment with both Ms. Liu and Mr. Huang.

24.     Due to their personal knowledge of each others' financial contributions, the contributions made by the other investors, and their access to the Company's books and records, each of the Bling Defendants had knowledge of the precise financial condition of the Company.

25.     Based on conversations that Yiming had with Mr. Wang, which Mr. Wang then communicated to the other Bling Defendants, each of the Bling Defendants knew that Yiming did not want to invest in a Company that was not sufficiently funded or that did not have other true EB-5 investors.

26.     For the purpose of inducing Yiming to invest in Bling, the Bling Defendants unlawfully agreed and conspired to falsify the then-present financial condition of the Company and to fabricate the existence of true EB-5 investors to make it more attractive to Yiming.

27.     On or around May 21, 2014, Yiming and his wife met in person with Mr. Wang at Mr. Huang's business office.  Although Mr. Huang did not personally participate in the meeting, he was physically present in his office while this meeting occurred and, upon information and belief, knew of Mr. Wang's meeting with Yiming and his wife and actively assisted Mr. Wang in preparing for the meeting.

28.     During this meeting, and in furtherance of the conspiracy among the Bling Defendants, Mr. Wang, acting on his own behalf and at the direction of and on behalf of the other Bling Defendants, presented the Project to Yiming.  Among other things, Mr. Wang, with the knowledge and assistance of the remaining Bling Defendants, represented to Yiming that the Project was already sufficiently funded with an aggregate investment of $5 million - $1.5 million from the Bling Defendants combined, an additional $1.5 million from the other two original members, and $1 million each from two other individuals who Mr. Wang represented were EB-5 investors, Fang Wan and Jiangbo Chen.

29.     Mr. Wang further represented to Yiming that his proposed $1 million investment was needed only to add the final, high-end upgrades to convert the Project into a luxurious and unparalleled karaoke experience, which was supposed to be completed in December 2014, and that the substantial investments Bling already received, when coupled with the imminent opening date, made the Project a "no-risk" proposition.  Mr. Wang specifically represented to Yiming that the Project was nearing its final stages and that Yiming needed to invest soon if he wanted to have an opportunity to use that investment for the EB-5 Program.  Finally, he

represented that Mr. Huang was running the day-to-day operations of the Company, was highly experienced, and would be responsible for the Project's management.

30.     Mr. Wang also showed Bling's business plan to Yiming during this meeting, although he would not permit Mr. Wang to retain a copy of it.  Mr. Wang informed Yiming that the plan was prepared by Mr. Huang and Ms. Liu.  The business plan was in all material respects the same plan that was ultimately dated June 2014, except for the addition of references to Yiming as an additional investor.  It repeated many of the representations made by Mr. Wang verbally during this meeting.  *See* Exhibit A.

31.     Yiming asked Mr. Wang if he could speak with Mr. Huang.  Mr. Wang rejected Yiming's request, represented that he (Mr. Wang) represented both Mr. Huang and Ms. Liu, and that Mr. Huang and Ms. Liu knew of and agreed with what Mr. Wang was representing to Yiming.

32.     The Bling Defendants were the controlling sellers of Bling's membership interests.

33.     At no time did Ms. Liu, Mr. Huang, Mr. Wang or anybody else associated with Bling provide Yiming with any truthful financial disclosures, private placement memoranda, or any other accurate company-related information concerning these purported investments or the financial condition of the Company.

34.     Instead, Ms. Liu and Mr. Huang furthered the conspiracy by fabricating false documentation concerning the alleged investments to date, including a false "business plan" dated in June 2014 (though which had been prepared and shown to Yiming earlier than June).  *See* Exhibit A.  This so-called business plan represented that several million dollars had already been received, that two of these investors were fellow EB-5 investors, that the EB-5 investors

would have active management roles with the Company, and that the Project would be completed in 2014 for approximately $4.5 million.  The business plan also contained false financial projections that were completely made up and lacked any basis in reality or any sort of risk analysis.

35.     All of these representations were false and were made for the purpose of inducing Yiming to invest in Bling.

36.     Meanwhile, as part of his anticipated investment, Yiming sought legal representation to assist him with the application for the EB-5 Program.  Mr. Wang referred Yiming to the Attorney Defendants.

37.     Unknown to Yiming at the time, the Attorney Defendants had a pre-existing relationship with the Bling Defendants.  They were partners with and listed on the website of one of Mr. Wang's businesses, bostonstudents.org, had represented at least one of the other purported EB-5 investors in connection with this Project, had attempted to secure additional investors for the Company in China, and also represented at least one entity, BOS Auto, that purportedly did business with Bling and the Bling Defendants.  The Attorney Defendants also prepared Bling's tax returns and performed other accounting functions for the Company, and therefore had intimate knowledge of Bling's true financial condition.

38.     In direct violation of Mass. R. Prof. Resp. 1.7, the Attorney Defendants never disclosed any of these conflicting relationships to Yiming and never obtained his informed consent to the representation in light of these conflicts.

39.     In or around August 2014, Yiming entered into a Retainer Agreement with the Attorney Defendants.

40.     Under the terms of the Retainer Contract, the Attorney Defendants expressly agreed to consult with Yiming concerning his immigration petition, guide him through the application process, and review all legal documents from the Project.  In exchange, the Attorney Defendants charged Yiming the exorbitant fee of $30,500.00, plus out-of-pocket costs and expenses, all of which he paid.

41.     By agreeing to serve as Yiming's attorney, the Attorney Defendants also agreed to comply with and were bound by the Rules of Professional Conduct to be free of any conflicting interests.

42.     Relying on the oral and written representations made by and on behalf of the Bling Defendants, as well as the Attorney Defendants' promises to review the documents and guide him through the immigration process, Yiming invested $1 million into Bling in August 2014.  Yiming received a 5% ownership interest in Bling for his investment.

43.     In breach of their contractual and common law obligations, the Attorney Defendants never reviewed a single Project document with Yiming.

44.     Yiming has since learned that the representations made by the Bling Defendants were false.  Specifically, he has learned that the original members had invested only $470,340.39 (instead of the $3 million represented), and that the additional $2 million "invested" by the two purported EB-5 investors was, in reality, only a $500,000 investment made by one of them, Jiangbo Chen.

45.     As Mr. Huang later admitted to Yiming, the remaining $1.5 million made up by a portion of Mr. Chen's contribution and the entirety of Ms. Wan's contribution were not equity investments at all, but rather loans that Mr. Huang and Ms. Liu used to justify Ms. Liu's substantial ownership interest and management powers in Bling.  Mr. Huang also admitted to

Yiming that he and Ms. Liu were responsible for falsely inflating the number, source, and amount of these purported investments and that he was responsible for preparing the Company's business plan

46.     The two so-called "investors" that the Defendants had represented to be EB-5 investors were not true EB-5 investors since neither invested $1 million into the Company nor were actually granted any active management roles with the Company.

47.     Yiming has also learned that the representations concerning the Project status, its expected opening date, and the financial projections were also false.

48.     Based on their access to and familiarity with Bling's books and records, each of the Bling Defendants knew their representations were false and yet unlawfully agreed and conspired to falsify the information to Yiming for the purpose of inducing him to invest.  The misrepresentations made to Yiming as part of the Bling Defendants' conspiracy were made knowing they were false for the purpose of inducing Yiming to invest in the Company.  Had Yiming known of the Company's true financial condition, the lack of legitimate EB-5 investors, the true status and expectations for the Project, or had he been provided with the Company's financial documents, he never would have invested in it.

49.     Furthermore, in breach of their ethical obligations, the Attorney Defendants worked hand-in-hand and conspired with the Bling Defendants to arrange for the fabrication of numerous Project documents, including but not limited to a materially false business plan and financial projections, supposed contracts with purported vendors, suppliers, and contractors, a forged Operating Agreement, and letters of financial commitments.

50.     For example, a number of the documents that were submitted to the USCIS represented that Bling had already been funded with $3.5 million from the original members

and two other EB-5 investors.  Given their role in Bling's accounting functions, and due to the

their pre-existing relationship with the Bling Defendants, the Attorney Defendants knew or

should have known that, contrary to the Bling Defendants' representations, there was actually

less than $1 million of equity investment in Bling at the time of Yiming's investment, and that

fraudulent misrepresentations were being made to Yiming for the purpose of inducing him to

invest.

51.    The Attorney Defendants knew or should have known of the members' and

Company's fraud, and failed to inform Yiming of the false representations, in direct breach of

their obligations to Yiming. The Attorney Defendants at times outright refused to respond

meaningfully to Yiming's questions about the Project.

52.    The Attorney Defendants and the Bling Defendants knew or should have known

that these and other documents were fraudulent, and yet they submitted them to the USCIS on

Yiming's behalf in September 2014 for the purpose of persuading the USCIS to grant Yiming's

immigration petition.  If the petition was denied, Bling would be contractually obligated to

return Yiming's investment, which it did not want to do.  Yiming was not aware at the time that

the Project documents were fraudulent.

53.    As part of his investment, Yiming entered into an Escrow Agreement with Bling

which required, expressly or implicitly, that the Company would use Yiming's investment only

for construction-related expenses for the Project.

54.    Upon information and belief, and in breach of the Escrow Agreement, Bling has

not used Yiming's investment for construction-related expenses for the Project and the Bling

Defendants, with the knowledge and assistance of the Attorney Defendants, have fabricated

documents for the purpose of avoiding repayment obligations set forth therein.

55.     Instead, the Bling Defendants have embezzled funds from the Company by paying themselves, either directly or through an agent, and others with whom they have an unlawful kickback arrangement with money rightfully belonging to Bling and its members. Based on Yiming's review of the limited financial documentation he does have, there are numerous highly suspicious payments that have been funneled through Bling's operation. Some of these include a $100,000 payment to a supposed auto dealership, BOS Auto, for an EB-5 "referral" fee, nearly $200,000 to a bar consulting firm, Twelve24 Cocktails, for a bar that does not exist, and numerous payments to a variety of contractors for work that appears to be duplicative or simply non-existent.

56.     At least one of these payments, the $100,000 "referral" fee to BOS Auto, was made for no legitimate business reason to one of the Attorney Defendants' clients, which the Attorney Defendants failed to disclose to Yiming.  Ms. Tian later admitted to Yiming that she knew about the embezzlement scheme but failed to mention any word of it to Yiming.

57.     Even if some of these expenses were legitimately incurred, it is quite apparent that the Bling Defendants have seriously mismanaged Bling's operation by elevating their self-interests and those of their associates over that of the Company and the minority members, including Yiming.

58.     The initial projections in the business plan were also knowingly false.  As of the investment by Yiming in June 2014, the Bling Defendants represented orally and in the written business plan that the Project would be completed by that December 2014, based upon other investments that allegedly they already had in hand, but in truth did not.  More than two years have passed and the Project remains far from complete, with no work having been performed in nearly a year.  The Bling Defendants have caused Bling to have already expended the entire

initial budget and now assert that the Company's budget needs to *double* to complete the

Project.  The Bling Defendants knew or should have known when they prepared the business

plan and presented it to Yiming that they did not have the funds to complete the Project as

represented in the plan, that they had no realistic prospect of completing the Project on the

schedule represented, that the profit projections were false and inflated and that they were

knowingly misleading Yiming to secure his $1 million investment.

59.     Throughout the Project and as part of the conspiracy, the Bling Defendants

continued to fabricate Project-related documents, including updated "business plans" that

contained forged letters of "commitments" from non-existent investors and distributors, and

fraudulent contracts that Bling did not actually enter into with certain vendors and suppliers.

Some of these false documents are attached as Exhibit B. These documents were forged in order

to support Yiming's EB-5 Petition and avoid the repayment obligation to him if the petition

failed.

60.     For example, in January 2016, information was provided to USCIS on Yiming's

behalf that represented – falsely – that there was an individual who had agreed to invest $3

million in February 2016.  The Bling Defendants later admitted to Yiming that no such

individual or contemplated investment ever existed.

61.     Based on Mr. Huang's history with Bling, his and his wife's status as the

Company's co-managers, and Mr. Huang and Ms. Liu's signature on many of these documents,

Mr. Huang and Ms. Liu were personally responsible for creating and fabricating these

fraudulent documents.  The terms of Yiming's investment required Bling to repay him if the

USCIS denied Yiming's immigration petition.

62.     The Bling Defendants intentionally and knowingly falsified these documents in support of Yiming's immigration petition without his knowledge or consent in order to prevent the USCIS from denying Yiming's immigration petition, which would trigger Bling's obligation to repay Yiming his investment.

63.     The Attorney Defendants knew or should have known that there was no such investor.  The Attorney Defendants had a duty to inform Yiming and the USCIS of these fraudulent documents.  In breach of this duty, they failed to tell Yiming or the USCIS of these fraudulent documents and instead presented them to the USCIS in an attempt to secure approval for Yiming's immigration petition.

64.     In June 2016, Yiming met personally with the three Bling Defendants.  During this meeting, Mr. Huang acknowledged that Ms. Wan had never actually invested money in the Company, that the documents he created detailing a proposed "new" investment of $3 million was fake and created for the sole purpose of attempting to get Yiming's immigration petition approved, and that he had consulted with the Attorney Defendants on ideas of how to prevent Yiming's petition from being rejected.

65.     On December 5, 2016, Yiming sent a letter to the Bling Defendants, as the controlling members and managers, demanding an accounting.  The Bling Defendants have failed and refused to provide an accounting.  Instead, they stated that there is a new investor that is willing to invest in the Company, but only on the condition that Yiming sign a liability release promising not to sue the Bling Defendants.

66.     Upon information and belief, there is no new, legitimate investor that is prepared to invest in the Company, and the Bling Defendants' statements are a further attempt to defraud Yiming out of his initial investment.

67.     The Defendants have failed and Bling has refused to return any of Yiming's investment.

68.     Yiming has been damaged by the Defendants' unlawful conduct.

## COUNT I
### (Breach of Fiduciary Duty – Bling Defendants)

69.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

70.     As the managers, controlling members, and fellow members of Bling, each of the Bling Defendants owed a fiduciary duty of utmost good faith and loyalty to Yiming.

71.     The Bling Defendants breached their duty by operating Bling for their own financial self-interest, including but not limited to defrauding Yiming out of his $1 million investment, engaging in direct or indirect self-dealings, embezzling money from the Company, severely mismanaging the Project, falsifying documents to prevent the Company from having to repay Yiming his investment, and by otherwise putting their self-interests above that of their fellow members.

72.     Yiming was and continues to be damaged by Defendants' conduct.

73.     Although Yiming's immigration petition has been conditionally approved, neither Yiming nor his wife has continued to proceed with the process of obtaining a green card through the EB-5 Program.

## COUNT II
### (Civil Conspiracy – All Defendants)

74.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

15

75.     The Defendants unlawfully entered into an agreement to commit an unlawful act; namely, to falsify the financial condition of the Company for the purpose of inducing Yiming to invest, to use Yiming and others' investments to engage in self-dealing, and to fabricate documents for the purpose of avoiding a contractual obligation to return Yiming's investment.

76.     Each of the Bling Defendants substantially assisted in performing this conspiracy by misrepresenting the nature of their and fellow members' investments, misrepresenting the true status and identity of the purported EB-5 investors and their respective investments, misrepresenting the purpose for which Yiming's investment would be used, falsifying documents to be used in support of Yiming's immigration petition, and by pulling money out of the Company for their own benefit and for that of their close associates.

77.     The Attorney Defendants have provided substantial assistance to the Bling Defendants and participated in the conspiracy by their conduct described herein, including misleading Yiming and knowingly presenting false documentation to the USCIS.

78.     Yiming has been damaged as a result of the Defendants' unlawful conduct.

## COUNT III
### (Fraud – Bling Defendants)

79.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

80.     The Bling Defendants fraudulently misrepresented the financial condition of the Company, including but not limited to making knowingly false statements concerning the amount of money invested in the Company, the source of the funds, the true nature of the investments, the identity of the investors, and the purpose for which Yiming's investment would be used.

81.     The Bling Defendants made these knowingly false statements for the purpose of inducing Yiming to invest in the Company.

82.     Yiming reasonably relied on the Bling Defendants' misrepresentations when deciding to invest.

83.     The Bling Defendants continued to engage in fraud after receiving Yiming's investment, including by directly or indirectly embezzling money from the Company, paying money to the Bling Defendants' close friends and associates, and falsifying documents for the purpose of preventing Bling to be contractually obligated to return Yiming's investment.

84.     Yiming has been damaged as a result of the Bling Defendants' fraudulent conduct.  He has lost his entire $1 million investment and has no reasonable expectation that the Company will ever be viable, let alone able to repay his investment or any return on that investment.

## COUNT IV
### (Breach of Contract - Bling)

85.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

86.     Yiming entered into an Escrow Agreement with Bling that required, among other things, that Yiming invest $1 million into the Company.

87.     The contract further required, explicitly or implicitly, that Yiming's money would be used solely for necessary construction of the Project.

88.     Bling breached the contract by using Yiming's money for other purposes, including for the Bling Defendants' own self-dealings.

89.     Bling breached the contract by providing false documentation to support Yiming's EB-5 immigration application to avoid triggering the obligation to repay him.

17

90.     Yiming has been damaged by Bling's breaches.

## COUNT V
**(Breach of the Covenant of Good Faith and Fair Dealing – Bling Defendants)**

91.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

92.     The Bling Defendants breached the covenant of good faith and fair dealing in the contract by their conduct described herein.

93.     The Bling Defendants are liable in an amount to be determined at trial for their breach of the covenant of good faith and fair dealing.

## COUNT VI
**(Securities Act of 1933 – Bling and Bling Defendants)**

94.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

95.     Bling and the Bling Defendants were required to provide potential investors, including Yiming, with the financial disclosures required under Regulation D, 17 C.F.R. §§ 230.501 - .506, prior to his investment.

96.     Bling and the Bling Defendants not only failed to provide the required disclosures, but materially and fraudulently misrepresented the true financial condition of the Company as set forth above.

97.     Bling and the Bling Defendants did so knowingly.

98.     Yiming has been damaged by Bling and the Bling Defendants' violations of The Securities Act of 1933 and Regulation D, 17 C.F.R. §§ 230.501 - .506.

## COUNT VII
**(G.L. c. 110A, § 101 *et seq.* – Bling and the Bling Defendants)**

99.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

100.     By offering the sale of a security in Bling to Yiming, Bling and the Bling Defendants were subject to the requirements of the Massachusetts Uniform Securities Act, G.L. c. 110A, § 101 *et seq.*

101.     Through the conduct described above, Bling and the Bling Defendants violated the statute by, among other things, employing a scheme to defraud Yiming out of his investment, failing to provide the required financial disclosures, falsifying the true financial condition of the Company, and otherwise engaging in acts, practices, and courses of business which operated as a fraud on Yiming.

102.     Yiming has been damaged as a result of Bling and the Bling Defendants' violations.

**COUNT VIII**
**(Demand for Accounting – Bling and the Bling Defendants)**

103.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

104.     Yiming is a member of and an investor in Bling who has the right to demand an inspection of and receive a full accounting of Bling's finances.

105.     Yiming demanded a full accounting from the Defendants on December 5, 2016.

106.     Defendants have failed and refused to provide an accounting to Yiming.

107.     Yiming is entitled to receive an immediate full accounting of the Company's financial condition from its inception in June 2013 through the present.

**COUNT IX**
**(Professional Malpractice – Attorney Defendants)**

108.    Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

109.    The Attorney Defendants owed a duty of reasonable care in the course of their legal representation of Yiming.

110.    The Attorney Defendants breached that duty by failing to review the Project documents with Yiming, failing to inform him of material information concerning Bling's true financial condition and the Bling Defendants' self-dealing conduct, failing to inform him of their conflicted representation, and by failing to inform him that certain of the material submitted on his behalf to the USCIS was fraudulent.

111.    Yiming has been damaged by the Attorney Defendants' professional malpractice.

**COUNT X**
**(Breach of Contract – Attorney Defendants)**

112.    Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

113.    Yiming entered into an enforceable contract with the Attorney Defendants.

114.    The contract required the Attorney Defendants to review all of the Project documents with Yiming.

115.    The Attorney Defendants breached the contract by failing to review all of the Project documents with Yiming.

116.    Yiming has been damaged by the Attorney Defendants' breach.

## COUNT XI
### (Unjust Enrichment – Attorney Defendants)

117.     Yiming repeats and incorporates by reference the allegations from each of the foregoing paragraphs as if fully set forth herein.

118.     Yiming paid the Attorney Defendants $30,500 with the understanding that the Attorney Defendants would be free of any conflict of interest and would at all times conduct their representation with Yiming's best interests in mind.

119.     The Attorney Defendants accepted the benefit of Yiming's payment knowing that he relied on them to be free of any conflict of interest and to represent him with his best interests in mind.

120.     The Attorney Defendants breached this level of trust by failing to be free of a conflict of interest and by failing to represent him with his best interests in mind.  The Attorney Defendants refused to meaningfully respond to his questions about the Project, failed to review Project documents with him, and failed to inform him of the true financial condition of the Company and the unlawful conduct engaged in by the Bling Defendants.

121.     Although Yiming's immigration petition was conditionally approved, he has received no benefit from the payment of $30,500 to the Attorney Defendants because he cannot proceed with the visa application knowing that it was supported by fraud.

122.     It would be unjust and inequitable to permit the Attorney Defendants to retain their unjust enrichment at Yiming's expense.

## RELIEF REQUESTED

Yiming respectfully requests that the Court:

(a)     Enter judgment in his favor against each of the Defendants on Counts I through XI;

(b)     Award Yiming his damages, including interest, costs, and his attorneys' fees;

(c)     Order Defendants to immediately return his $1 million investment in exchange for his rescission of his membership interest;

(d)     Provide a full and accurate accounting; and

(e)     Award any other relief this Court deems just and equitable.

## **JURY DEMAND**

Yiming hereby demands a trial by jury on all claims and issues so triable.

YIMING WANG,
By his attorneys,


/s/ Sean T. Carnathan
Sean T. Carnathan, BBO No. 636889
scarnathan@ocmlaw.net
Joseph P. Calandrelli, BBO No. 666128
jcalandrelli@ocmlaw.net
**O'Connor, Carnathan and Mack, LLC**
1 Van de Graaf Dr., Suite 104
Burlington, MA 01803
T: 781-359-9000

Dated:  March 17, 2017




Certificate of Service

I certify that the foregoing document was filed through the Court's electronic filing system on March 17, 2017, and that hard copies will be served on the new parties to this action.


/s/ Joseph P. Calandrelli