UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YIMING WANG,<br>　　　　Plaintiff, | )<br>) |
| | ) |
| v. | ) |
| | )　Case No. 1:16-cv-12581 - DJC |
| XINYI LIU, YUANLONG HUANG,<br>ZHAONAN WANG, BLING<br>ENTERTAINMENT, SHENGXI TINA<br>TIAN and MT LAW, LLC,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>) |
| | ) |

## MEMORANDUM OF DEFENDANTS XINYI LIU, YUANLONG HUANG AND ZHAONAN WANG IN SUPPORT OF MOTION TO DISMISS COUNTS I, II, IV, V, VI, VII AND VIII OF AMENDED COMPLAINT

In this action, plaintiff Yiming Wang ("Plaintiff" or "Yiming") alleges that sometime in

2014 defendants Xinyi Liu ("Liu"), Yuanlong Huang ("Huang") and Zhaonan Wang

("Wang")(collectively referred to in the complaint as the "Bling Defendants"), with the

complicity and agreement of plaintiff's then attorneys (the "Attorney Defendants"), fraudulently

induced him into investing $1 million into the Bling Defendants' company, Bling Entertainment,

LLC ("Bling"), pursuant to the EB-5 visa program. Without sufficient supporting facts, plaintiff

alleges a nefarious conspiracy between the Bling Defendants and the Attorney Defendants to

"make materially false representations … concerning the Company's financial condition, the

status of fellow investors, and the prospect of potential new investors" so as to induce him to

invest in the company so that he and his wife, both Chinese nationals, would be eligible to

receive a "green card." See Amd. Cmp., page 1 introductory statement. As set forth below, the

claims against the Bling Defendants Counts I, II, IV, V, VI, VII and VIII, must all be dismissed

for failure to comply with the requirement to plead fraud with particularity under Fed. R. Civ. P. 9(b), failure to state a claim under Fed. R. Civ. P. 12(b)(6), and failure to join an indispensable party under Fed. R. Civ. P. 12(b)(7).

At the inception of this action, the Bling Defendants filed a motion to dismiss the original complaint for many of the same reasons set forth in the instant motion. In lieu of opposing that motion, and in recognition that its pleading was, in fact, deficient, Plaintiff filed an amended complaint to add the Attorney Defendants and Bling as defendants and presumably to add support to his allegations.. But even a quick review of the amended complaint reveals that Plaintiff still has not properly plead his theories and the deficiencies that existed in the original complaint have not been corrected. Like the original complaint, the amended complaint is full of broad-brush conclusory allegations of fraud implicating the "Bling Defendants" collectively, without any real effort to describe exactly what each of the Bling Defendants, individually, did in furtherance of the alleged fraud.

Since the filing of the amended complaint on March 17, 2017, Bling has filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.[1] Because of the automatic stay imposed by Section 362 of the Bankruptcy Code, this matter is stayed as to Bling. But because (i) the allegations asserted in the amended complaint necessarily implicate Bling (ii) the allegations against the remaining defendants are derivative or are on account of their roles on behalf of Bling, and (iii) the relief demanded by Plaintiff implicates the estate of Bling (i.e., return of his investment in Bling), this action should be stayed pending the outcome of the Bling

---

[1] Bling filed a petition for Chapter 7 bankruptcy on March 29, 2017, In re Bling Entertainment, LLC, Docket No. 17-11058 (Bankr. D. Mass.).

bankruptcy proceedings. Whether this Court stays the entire proceeding now against the non-Bling defendants or not, this matter should be dismissed.

FACTS[2]

<u>Yiming Invests $1 Million to Obtain a "Green Card" Under the EB-5 Visa Program.</u>

Bling is a limited liability company formed in 2013 by defendants Wang, Liu, and two additional members. Cmp, ¶17. Bling was formed to develop and operate a bar and karaoke facility in Malden, MA (the "Project"). <u>Id.</u> Liu and her husband, defendant Huang ("Huang"), are the current co-managers of Bling. <u>Id.</u>, ¶¶18, 19. Huang, however, is not a member of Bling. <u>Id.</u>, ¶17. Plaintiff alleges that since Bling's organization, Huang acted as *de facto* manager until his formal appointment in January 2015. <u>Id.</u>

Plaintiff claims that in 2014 he was looking for a suitable investment under the EB-5 visa program which, in exchange for an investment of $1 million and the promise of job creation, would entitle Yiming and his wife to a "green card." Amd. Cmp., ¶20. Through an unnamed "mutual acquaintance," Wang allegedly learned that Yiming sought a suitable EB-5 investment and solicited his investment into Bling. <u>Id.</u>, ¶22. Yiming alleges, based on "conversations" he had at some unidentified date and location with Wang, that both Liu and Huang were aware of his interest and his criteria for assessing a suitable investment. <u>Id.</u>, ¶¶23-25. Thereafter, all three "Bling Defendants" "unlawfully agreed and conspired" to falsify the financial condition of Bling and the status of its other EB-5 investors in order to induce Yiming to invest in Bling. <u>Id.</u>, ¶26. The complaint is silent as to when and how this conspiracy was hatched.

---

[2] The defendants do not concede the accuracy of the plaintiff's allegations. However, for purposes of the present motion, well plead factual allegations must be presumed true. <u>Gargano v. Liberty Int'l Underwriters, Inc.</u>, 572 F.3d 45, 48-49 (1st Cir. 2009). Conclusory statements of fact and conclusions of law, however, do not enjoy the same presumption and should be disregarded. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 681 (2009).

According to Yiming, his first meeting about his potential investment occurred on May 21, 2014 with Wang. Id., ¶27. In fact, Yiming does not allege that he ever met with Liu or Huang prior to his decision to invest. Yiming alleges, however, "upon information and belief", both Liu and Huang knew about his meeting with Wang and assisted Wang in preparing for the meeting. Id. Thereafter, Wang allegedly misrepresented Bling's financial condition. Id., ¶28. Without providing much detail, Yiming then lumps all the Bling Defendants together, and claims that each is individually liable to him insofar as Wang supposedly acted at the others' direction and on behalf of all of them. Id.

At the May meeting, Wang shared a copy of a business plan, a later iteration of which is annexed to the complaint as Exhibit A. The plan, which is approximately 70 pages, "repeated **many** of the representations made by Wang verbally during the meeting." Id., ¶30. (Emphasis added). The complaint does not identify which of the "many" representations were covered by the business plans and which of the 70 pages Yiming claims contains false information. The Bling Defendants are left to guess at that. Liu and Huang purported fabricated "false documentation" which "included" the business plan. Id., ¶34. Yiming then goes on to allege that none of the three Bling Defendants provided any "truthful financial disclosures, private placement memoranda, or any other accurate company-related information…," implicitly suggesting that each must have provided "untruthful" and "inaccurate" information, though the complaint does not identify specifically what inaccurate information each provided, preferring to tar them all with the same "Bling Defendants" brush. Id.,¶33.

Compounding his incredible story, Yiming alleges that he engaged counsel to help him to review all the documentation provided by the Bling Defendants and to represent him in handling his EB-5 immigration application. Consistent with his shotgun approach to this litigation,

Yiming has now added these Attorney Defendants to this lawsuit. "Relying on the oral and written representations made by and on behalf of the Bling Defendants [without identifying what representations are referenced, which of the Bling Defendants made them, or when], as well as the Attorney Defendants' promises to review the documents and guide him through the immigration process,...," Yiming claims to have invested $1 million in August 2014 in exchange for a 5% interest in Bling. Id., ¶42. According to Yiming, the Attorney Defendants "worked hand-in-hand and conspired with the Bling Defendants to arrange for the fabrication of numerous Project documents, including but not limited to a materially false business plan and financial projections, supposed contracts and purported vendors, suppliers, and contractors, a forged Operating Agreement, and letters of financial commitments." Id., ¶49. Not surprisingly, minimal if any detail is provided to support this ever expanding conspiracy which somehow grew between the time of the original complaint and the amended complaint to include not only the three Bling Defendants and Bling, but an entire law firm.

In fact, Yiming received what he bargained for. He received a 5% interest in Bling and conditional approval for a "green card" from the USCIS. Id., ¶73. According to Yiming, however, the Bling Defendants embarked in a mammoth post-investment cover-up to ensure that he received his green card because if his visa petition was denied, "Bling would be contractually obligated to return Yiming's investment..." Id., ¶52. Conspicuous by its absence, Yiming fails to identify the contract which supposedly contains this unconditional obligation to refund and the language upon which he relies for that conclusion. The Bling Defendants suspect that is because no such obligation actually exists.

<u>The Escrow Agreement and Mismanagement of the Project.</u>

In connection with his investment, Yiming entered into an escrow agreement (the "Escrow Agreement") which required "expressly or implicitly" that his investment in Bling be used for only construction-related expenses. <u>Id.</u>, ¶53. Also conspicuous by its absence, the Escrow Agreement is not an exhibit to the Complaint. A true and accurate copy of the Escrow Agreement, and the Subscription Agreement referenced therein, both signed by Yiming, are attached to the Liu Affidavit as Exhibits B and C, respectively.[3] Contrary to Yiming's pleading, the Escrow Agreement does not specify that the escrowed monies are to be used only for construction purposes. Yiming alleges "upon information and belief, and in breach of the Escrow Agreement" Bling failed to use his investment for required purposes and, acting together, the Bling Defendants and the Attorney Defendants "have fabricated documents for the purpose of avoiding repayment obligations set forth therein." <u>Id.</u>, ¶54. As noted above, the parties are left to guess at what "repayment obligations" are supposedly contained in the Escrow Agreement. Compounding their transgressions, the "Bling Defendants" allegedly embezzled Bling funds, with the knowledge and complicity of the Attorney Defendants. <u>Id.</u>, ¶¶55-56. Although referencing two of the numerous "highly suspicious payments," he fails to identify the date of those payments and which of the Bling Defendants supposedly made those payments. He also provides no information about the other "numerous" payments. Yiming also alleges "numerous payments to a variety of contractors for work that appears to be duplicative or simply non-existent" without identifying a single one of these contractors or payments.

---

[3] Where a plaintiff had notice of a document, relied on it when drafting the complaint and explicitly referenced the document in the pleading, attaching that document to a motion to dismiss does not convert the motion to one for summary judgment. <u>Young v. Lepone</u>, 305 F.3d 1, 11 (1st Cir. 2002) (allowing consideration of documents submitted by defendant on motion to dismiss where the complaint contained references to" the documents and "the factual allegations of [the] complaint revolve around" the documents); <u>Beddall v. State Street Bank and Trust Company</u>, 137 F.3d 12, 16-17 (1st Cir. 1998)(affirming consideration of document which though not annexed to the complaint had been cited extensively in the complaint and relied upon by plaintiff).

The alleged fraud perpetrated by all the defendants gives rise to seven counts against the Bling Defendants: Breach of Fiduciary Duty (Count I), Civil Conspiracy (Count II), Fraud (Count III), Covenant of Good Faith and Fair Dealing (Count V), Securities Act of 1933 (Count VI), G.L. c. 110A, §101 et seq. (Count VII) and Demand for Accounting (Count VIII).

## LEGAL STANDARDS

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiffs' favor. Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009). However, a court is not bound "to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets' woven into the fabric of the complaint." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). To successfully withstand a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Gargano, 572 F.3d at 48-49.

"Factual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). According to the Supreme Court, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). As the Court stated, "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a) (2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557. The Court also noted that pleadings must contain more than

"labels, conclusions and formulaic recitation[s] of a cause of action's elements...." Id. at 545. Otherwise, where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 547. In Iqbal, the Court cautioned that allegations that are conclusory are not "entitled to be assumed true" for purposes of ruling on a motion to dismiss. Iqbal, 556 U.S. 681; see also Twombly, 550 U.S. at 554-55. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO PLEAD WITH PARTICULARITY AS REQUIRED BY RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "in alleging fraud... the party must state with particularity the circumstances constituting fraud..." Fed. R. Civ. P. 9(b).

> The Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule. One of the main purposes of the rule is to apprise the defendant of the fraudulent claim and of the acts that form the basis for the claim. [citations omitted]. In other words, "in cases in which *fraud lies at the core of the action*, the rule does not allow a complainant to file suit first and subsequently to search for a cause of action.

Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985)(emphasis in the original); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)("Rule 9 imposes a heightened pleading requirement for allegations of fraud in order to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits' and to prevent the filing of suits that simply hope to uncover relevant information during discovery"). Where fraud is alleged, the plaintiff must plead the "who, what, where and when of the allegedly false or fraudulent representation. See Rodi v. S. New England School of Law, 389 F.3d 5, 15 (1st Cir. 2004); McGuinty v. Beranger Volkswagen, Inc., 633 F.2d

226, 228 (1st Cir. 1980)(Rule 9 requires specification of time, place and content). If the fraud is the subject of an alleged conspiracy, the Rule 9(b) requirement to plead with particularity also applies to the conspiracy allegations. Hayduk 775 F.2d at 444; see also Komari v. Tufts University, 2016 U.S. Dist. LEXIS 99627 (D. Mass. 2016)(applying Rule 9(b) to allegation of conspiracy based on fraud). Where, as here, all of the counts against the Bling Defendants are based on the alleged fraud, Rule 9(b) applies to each of the counts. See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009)(Rule 9(b) applies to all "associated claims where the core allegations effectively charge fraud."); Miller v. Donnini, 2015 U.S. Dist. LEXIS 39414 (D. Mass. 2015)(dismissing breach of fiduciary duty and conspiracy claims based on allegations of fraud for failure to comply with Rule 9(b)).

Counts V and VI allege securities fraud. In the securities fraud context, the requirement to plead with particularity is particularly stringent. New England Data Services, Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987); Wayne Investment v. Gulf Oil Corp. 739 F.2d 11, 13 (1st Cir. 1984); Wilkes v. Heritage Bancorp., 767 F. Supp. 1166, 1169 (D. Mass. 1991). As explained by one court,

> This court has been "especially rigorous" in applying Rule 9(b) in securities fraud actions "to minimize the chance 'that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence.'" Romani, 929 F. 2d at 878 (quoting New England Data Services, Inc. v. Becher, 829 F. 2d, 288 (1st Cir. 1987)).

Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1223 (1st Cir. 1996). This is exactly what Yiming is doing in the instant action and precisely why Rule 9(b) should be applied to dismiss his baseless claims.

a) Only the Pre-Investment Statements Are Potentially Actionable Fraud.

Though several causes of action are plead, at its essence this complaint alleges fraud in the inducement. In reviewing the fraud allegations which permeate all of the counts against the Bling Defendants, only those statements which occurred prior to Yiming's investment in 2014 have any relevance to the fraudulent inducement claim. Allegedly false statements made after the investment could not have been part of the inducement to invest. Thus, the potentially actionable misrepresentation boils down to two conclusory allegations in the complaint: (1) affirmatively misrepresenting the current funding status of the project (Amd. Cmp., ¶¶28); and (2) failing "to provide Yiming with any financial disclosures, private placement memoranda, or any other company-related information concerning these investments." Id., ¶33. See ¶80 (summarizing fraud allegations against the "Bling Defendants"). The balance of the complaint, i.e. all the allegations after paragraph 39 therein, relates to conduct which occurred post-investment. Not surprising, there is no allegation that Yiming relied upon any post-investment acts or omissions or somehow changed his position in reliance thereon. Therefore, they can be disregarded when evaluating the sufficiency of the fraud allegations. See Doyle, 103 F.3d at 193 (listing required elements to establish the tort of misrepresentation which include reliance and causation).

The allegations of fraud do not satisfy the heighted pleading requirement of Rule 9(b). Because the Counts against the Bling Defendants are all based on the alleged fraud, the claims against them should be dismissed. As noted above, most of the allegations are broadly plead by reference to the "Bling Defendants" without any real attempt to clearly segregate the allegations to identify which of the Bling Defendants allegedly did what, and when. This is especially true as to defendants Liu and Huang. All the allegedly affirmative statements made pre-investment

were made by Wang. As to Liu and Huang, the allegations boil down to Yiming's conclusion that because Liu is married to Huang, and Wang is Huang's cousin, they all must have been acting in concert. Amd. Cmp., ¶¶8, 9. Though Yiming has fabricated quite a story, when one reads carefully, the allegations are wholly based on suspicion and innuendo with very little of substance and lacking the detail required by Rule 9(b). See Robins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008)(dismissing fraud claim because "the complainant's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom made it impossible for any defendant what particular acts they are alleged to have committed.")

    b) There are Insufficient Facts to Support the Allegation of Conspiracy.

The complaint alleges that the fraudulent conduct was part of a conspiracy among the Bling Defendants and the Attorney Defendants. But, these conclusions are not enough. "[R]eferrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." Hayduk, 775 F. 2d at 444. See also Doyle, 103 F.3d at 194, citing, Hayduk, supra. Moreover, where the allegations are based on "information and belief", "supporting facts on which the belief is founded must be set forth in the complaint." Id. See Wilkes v. Heritage Bancorp, Inc., 1990 U.S. Dis. LEXIS 21033 (D. Mass. 1990)(rejecting allegations "upon information and belief" for Rule 9(b) purposes where complaint does not provide details as to the basis for this belief.) No such supporting facts are pled. Either Yiming provides no facts, or makes grandiose conclusions to support his "information and belief" allegations rather than provide specific acts. For example, "based on [unidentified] conversations Yiming had with Mr. Wang,.." Wang discussed the potential investment with Liu and Huang. Amd. Cmp., ¶23. "Based upon [unidentified] conversations"

with Wang, each of the other defendants knew of Yiming's investment criteria. Id., ¶25. The Bling Defendants are entitled to know the who, what, where and when of all those discussions. Similarly, although Huang did not participate in the May 21st meeting with Wang, because he was in the building, "upon information and belief", Huang must have known of the meeting and actively assisted in its preparation. Id., ¶27. This is pure speculation and not enough to meet the exacting requirements of Rule 9(b).

### c)  The Individual Defendants Had No Duty to Disclose.

As to the alleged failure to "provide financial disclosures, private placement memoranda, or any other company-related information," assuming, *arguendo*, that Bling had that duty, there are no facts alleged which places a parallel duty of disclosure on the individual Bling Defendants. See Argument II, *infra.*  In fact, as to defendants Liu and Huang, there is no allegation that Yiming ever even spoke to them in connection with his decision to invest and no explanation as to how they incurred a duty to disclose where they did not directly participate in the transaction. In short, the complaint is long on conclusions and short on facts.

### d)  The Lack of Particularity Permeates the Complaint.

The lack of sufficient specificity is strikingly apparent in the counts themselves.  For example, in his conspiracy count, Count II, all of the allegations refer to the "Bling Defendants" and the "Attorney Defendants" without any attempt to break out the predicate acts by each in furtherance of the conspiracy.  The complaint alleges that the "Bling Defendants" falsified documents. Amd. Cmp., ¶62. Did all three of the Bling Defendants falsify the documents? If so, which ones?  What about the allegations that the Attorney Defendants "worked hand-in-hand" in the fabrication of documents?  Id., ¶49.  Are these the same documents or different ones?  Yiming alleges that "[e]ach of the Defendants substantially assisted in performing this

conspiracy by misrepresenting the nature of their and fellow members' investments, misrepresenting the true status and identity of the purported EB-5 investors and their respective investments, misrepresenting the purpose for which Yiming's investment would be used, falsifying documents to be used in support of Yiming's immigration petition, and by pulling money out of the Company for their own benefit and that of their close associates." Amd. Cmp., ¶76. Where in the complaint are the facts identifying the particular "substantial assistance" rendered by each of the defendants? What did each defendant do that constitutes "substantial assistance," and when? Who are the close associates? What money was pulled out? Which defendant received a payment? The fact that Yiming finds some of the expenses to third-parties "suspicious," without more, highlights that this entire complaint is predicated on nothing more than impermissible conjecture.

In his fraud count, Count III, Yiming alleges all sorts of transgressions upon which he relied in making his decision to invest. That notwithstanding, almost the entirety of the alleged transgressions occurred post-investment. Yiming invested in August 2014. Therefore, he could not have relied upon conduct which occurred in connection with project development post-investment (¶59), his attempts to get his green card after making the investment (¶60), forging documents to avoid returning Yiming's investment (¶61, 62), statements made in June 2016 (¶64) failure to provide an accounting and stating there was a new investor in December 2016 (¶65), and embezzling money (¶83). Yiming further alleges that the Bling Defendants falsified documents submitted to the immigration service to prevent a denial of the EB-5 petition which, would have triggered an obligation to repay his investment. Id., ¶62. What documents were submitted and how are they false? Who authored them? Who sent them out? The fact is, he received his desired conditional "green card" under the EB-5 program so how has he been

damaged? As noted above, the failure to clearly identify what each individual Bling Defendant did is fatal. Each of the defendants is entitled to know exactly what he/she allegedly said or did, to whom, where and when. Yiming's repeated conclusory allegations do not make them true and does not satisfy his obligations under Rule 9(b). Hayduk, 775 F. 2d at 444. This need for conjecture on a complaint sounding in fraud is exactly what Rule 9(b) seeks to avert.

Each of the counts against the Bling Defendants is based on allegations of fraud. As Rule 9(b) has not been satisfied, the counts against the Bling Defendants should be dismissed.

II.     COUNTS VI AND VII FAIL TO STATE A CLAIM OF SECURITIES FRAUD.

As discussed *supra*, in the securities fraud context, Rule 9(b) applies and its application is even more stringent. See Fed. R. Civ. P. 9(b); Wayne Investment 739 F.2d at 13; New England Data Services, Inc., 829 F.2d at 288; Wilkes, 767 F. Supp. at 1169. For the reasons previously argued, Yiming has failed to meet the requirements of Rule 9(b) with respect to all of his fraud claims, especially those alleging violation of securities laws. Therefore, Counts VI and VII should be dismissed.

As to the substantive allegation of fraud under the Securities Act of 1933 (the "Securities Act"), notwithstanding that the extensive disclosures shared with Yiming and his immigration counsel were sufficient to convince the government that investment into Bling satisfied the strict financial and employment requirements for the EB-5 program, Yiming has alleged that the Defendants failed to provide any financial disclosures as required by Regulation D, 17 C.F.R. §§230.501-.506, and that such failure, in turn, is a violation of the Securities Act. Cmp., ¶46. This claim is even more bizarre when one observes that in the Subscription Agreement, Yiming warranted and represented that he had been provided with all information necessary to make an informed decision regarding his investment and confirmed that this warranty and representation

was true as of the date of the closing. See Liu Aff., Exh. C, Subscription Agr., Art. III(c); Art.
IV, §4.1(a). Somehow, he now seeks to disavow his own warranty and representation.
Regardless, neither Bling nor the Defendants were required to comply with Regulation D.
Therefore, the failure to do so does not state a claim for securities fraud.

Broadly speaking, a company which offers or sells its securities is required to register the
transaction with the Securities Exchange Commission ("SEC") unless it falls within one of the
several exemptions thereto. Securities Act, §5. One exemption to this registration requirement
is set forth in Section 4(a)(2) of the Securities Act, which provides an exemption for sales not
involving a public offering. Securities Act §4(a)(2). For those types of sales, Regulation D
provides a "safe harbor." 17 C.F.R., §230.500. However, Regulation D is not the exclusive
means of claiming the protection of Section 4(a)(2), nor is Section 4(a)(2) the only available
exemption under the Securities Act. See 17 C.F.R., §230.500(c)("an issuer's failure to satisfy all
the terms and conditions of [Regulation D] shall not raise any presumption that the exemption
provided by section 4(a)(2) of the Act is not available."). Regulation D would only come into
play if Bling, as the issuer, elected to claim exemption thereunder. There is no allegation in the
complaint that Bling made such an election, which is a required element of claiming a
Regulation D exemption. See, 17 C.F.R., §230.503(a)(1)(requiring issuers claiming exemption
under Regulation D to file a Form D notice with the SEC).

Even if Bling had elected to claim a Regulation D exemption which may subject it, as the
issuer, to liability if it did not comply therewith and did not otherwise qualify under another a
different exemption, the complaint fails to plead any facts which would subject the Bling
Defendants, individually, to liability under the Securities Act for Bling's alleged failure to
comply with Regulation D. This is even more curious as, according to the complaint, neither

Huang nor Liu solicited or ever even spoke to Yiming prior to his decision to invest. Nothing in Regulation D imposes independent liability on members or managers just because of their status as such, and certainly not on persons who were not even involved with the transaction. See, generally, 17 C.F.R., §§230.501-.506. For these reasons, Count VI should be dismissed.

## III. PLAINTIFF IS ENGAGED IN AN IMPERMISSIBLE FISHING EXPEDITION.

Defendants anticipate that Yiming will protest that without discovery he cannot possibly provide the necessary facts to support his fraud claims, and finding facts is exactly the purpose of discovery. If that is his position, it merely confirms that Yiming is engaged in an improper a fishing expedition. See Doyle, 103 F.3d at 194(one purpose of Rule 9(b) is to "prevent the filing of suits that simply hope to uncover relevant information during discovery"); Wayne Inv., Inc., 739 F.2d at 14 (1st Cir. 1984) (Rule 9(b) not satisfied when support for allegation consisted of speculation and allowing the allegations of fraud to stand would be tantamount to "issu[ing] a license for a 'fishing expedition' in uncharted waters."). The Rule is meant to prevent using spurious allegations of fraud to justify an excuse for unfettered discovery in the hope that a plaintiff might "discover" facts to support his suspicions. It appears that having achieved his provisional EB-5 status and having no further need for Bling, plaintiff is slinging mud in the hope of manufacturing leverage for a return of his investment. This Court should not countenance this abuse of the legal process and wholesale disregard for the mandate of Rule 9(b).

## IV. THE BLING DEFENDANTS ARE NOT PARTIES TO THE ESCROW AGREEMENT AND THEREFORE CANNOT HAVE BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING ASSOCIATED THEREWITH.

Count IV alleges breach of the Escrow Agreement by Bling. Count V seeks to hold the Bling Defendants individually liable for breach of the implied covenant of good faith and fair dealing associated with that contract. See Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass.

451, 471 (1991) (every contract carries with it a covenant of good faith). While Yiming may have a cause of action based on the covenant against Bling, individually the Bling Defendants are not parties to the Escrow Agent and therefore they cannot be liable for breaching the covenant of good faith and fair dealing associated therewith. See Chockel v. Senzyme Corp., 449 Mass. 272, 276 (2007) (implied covenant only as broad as contract which governs the relationship). Insofar as the Bling Defendants are not parties to the Escrow Agreement and have no obligations thereunder, there is no covenant implied against them. Therefore, Count V should be dismissed.

V.    THERE IS NO CAUSE OF ACTION FOR AN ACCOUNTING AGAINST THE INDIVIDUAL DEFENDANTS.

Count VII seeks an accounting. Yiming claims that he demanded an accounting by letter dated December 5, 2016. Id., ¶65. He has not annexed a copy of the demand letter to the complaint. Without waiting for a response, just over two weeks later, he filed suit. While as a member Yiming has the right to request access to certain records from Bling for legitimate purposes, he has no right to demand that the Bling Defendants, individually, provide him with access to corporate records, much less prepare a corporate accounting for him.

M.G.L. c. 156C, §10 provides:

> Each member ... of a limited liability company has the right, **subject to such reasonable standards, including standards governing what information and documents are to be furnished at what time and location and at whose expense,** as may be set forth in the operating agreement or otherwise established by the manager ..., to obtain **from the limited liability company** from time to time upon reasonable demand in writing for any purpose reasonably related to the member's ... interest ... of the limited liability company (i) true and full information regarding the state of the business and financial condition of the limited liability company, ...

(Emphasis added).

The statute only obligates the entity, in this case Bling, to provide the records. It does not obligate the entity or its members to analyze the company records or prepare an accounting. It

17

also does not mandate that a member be given unfettered rights to corporate books and records for the sole purpose of harassment and to manufacture leverage for the return of his investment. Id. See Chitwood v. Vertex Pharmaceuticals, Inc., ___ Mass ___ (March 20, 2017) (restricting access of shareholder to corporate records needed only for legitimate claims). Most importantly, none of the individual Bling Defendants is a party charged with providing access to company records under the statute. Although some of the Bling Defendants may have access to company records in their capacity as managers, individually, they have no right to turn over any records and certainly no obligation to prepare an accounting for Yiming's benefit. Therefore, Count VIII should be dismissed as to the Bling Defendants. To the extent that the claim for an accounting is appropriate against Bling, this is not the appropriate forum now that Bling has filed for bankruptcy.

VI.     YIMING HAS FAILED TO NAME AN INDISPENSIBLE PARTY AND THE BANKRUPTCY OF BLING MAKES PROSECUTING THESE CLAIMS IMPRACTICAL.

Rescission is an equitable remedy which is intended to put the parties back to the position that they would have been had they not entered into the agreement in the first place. Bellefeuille v. Madeiros, 335 Mass. 262, 266 (1957). Yiming invested $1 million into Bling in exchange for a 5% interest therein and Bling's support of an EB-5 visa application for himself and his wife, Yumei Zhang. As part of this lawsuit, he seeks a rescission of his investment in exchange for tendering back his 5% interest in Bling. Amd. Cmp., Prayer (c).

Bling invested substantial time and money towards supporting Yiming's and his wife's, Ms. Zhang, application for an EB-5 visa. Yiming admits that he and his wife received the desired conditional "green card". Amd. Cmp.,¶73. As Ms. Zhang benefitted directly from the investment in Bling by having Bling support her EB-5 application, if there is going to be

rescission, she too must be made a party to this action so that an order can entering requiring her

to disgorge the benefits that she obtained in exchange for the investment. At a minimum, this

would include the time value and legal fees incurred by Bling in support of her visa application.

Moreover, if rescission is to occur, she and Yiming must be required to notify the immigration

authorities so that their conditional EB-5 status can be revoked. Because complete relief cannot

be granted without Ms. Zhang being subject to the jurisdiction of this Court, if this case survives,

she must be made a party under Rule 19(a). See Hutchins v. Cardiac Science, Inc., 456 F. Supp.

2d 173, 191 (D. Mass. 2006)(joinder required as a matter of efficiency and fairness); Fed. R. Civ.

P. 19(a)(1)(A)(requiring joinder of party if in that person's absence, complete relief is not

available). Accordingly, under Rule 12(b)(7), the claims against the Bling Defendants should be

dismissed unless Ms. Zhang is joined as a party.

Additionally, as noted above, on March 29, 2017, Bling filed a petition for bankruptcy

under Chapter 7 of the Bankruptcy Code. Insofar as the claims against the Bling Defendants are

derivative or on account of their roles on behalf of Bling, complete relief cannot be afforded in

the absence of Bling. To the extent Yiming seeks a return of his $1 million investment from

Bling and to return his 5% interest therein, clearly this action cannot proceed without Bling's

involvement. As an insider, Yiming's claim will likely be wiped out by what may be a no-asset

Chapter 7 bankruptcy. Moreover, if monies were improperly diverted by the Bling Defendants

as alleged by Plaintiff, those allegations likely fall upon the Chapter 7 Trustee to investigate for

the benefit of the bankruptcy estate, and not Yiming. Due to Bling's bankruptcy, Yiming cannot

proceed against Bling absent relief from the automatic stay. 11 U.S.C, § 362(a). Accordingly,

the entire complaint should be stayed pending the conclusion of the Bling bankruptcy

proceedings.

<u>CONCLUSION</u>

Based upon the foregoing, defendants respectfully move that plaintiff's complaint be dismissed.

XINYI LIU, YUANLONG HUANG,
and ZHAONAN WANG,
By their attorney,

/s/ John H. Perten
John H. Perten (BBO # 528728)
SHEEHAN PHINNEY BASS & GREEN, P.A.
255 State Street, 5th Floor
Boston, MA 02109
(617) 897-5641
jperten@sheehan.com

Dated: April 14, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2017 a copy of the foregoing was electronically filed

through the Court's CM/ECF system and thereby served upon all counsel in this case.

/s/ John H. Perten