UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YIMING WANG,<br><br>Plaintiff,<br><br>v.<br><br>XINYI LIU, YUANLONG HUANG, ZHAONAN WANG, BLING ENTERTAINMENT, LLC, SHENGXI TINA TIAN and MT LAW, LLC,<br><br>Defendants. | Civil Action No. 16-cv-12581 |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                        **March 13, 2018**

### I.    Introduction

Plaintiff Yiming Wang ("Yiming") has filed this lawsuit against Defendants Xinyi Liu ("Liu"), Yuanlong Huang ("Huang"), Zhaonan Wang ("Wang"), Bling Entertainment, LLC ("Bling"), Shengxi Tina Tian ("Tian") and MT Law, LLC ("MT Law") (collectively, "Defendants"). He alleges breach of fiduciary duty (Count I), civil conspiracy (Count II), fraud (Count III), breach of contract (IV), breach of the covenant of good faith and fair dealing (Count V), violation of the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.* (Count VI), violation of the Massachusetts Uniform Securities Act ("MUSA"), Mass. Gen. L. c. 110A, §101 (Count VII), demand for accounting (Count VIII), professional malpractice (Count IX), breach of contract (Count X) and unjust enrichment (Count XI). D. 16. Defendants Liu, Huang and Wang (collectively, "Bling Defendants") have moved to dismiss all counts against them, including

Counts I, II, III, VI, VII, and VIII, [1] under Fed. R. Civ. P. 12(b)(6) and Rule 12(b)(7).[2] D. 25. For the reasons stated below, the Court ALLOWS the motion to dismiss as to Counts VI and VII, and DENIES the motion as to the other claims.

## II. Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine "whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff, state a claim for which relief can be granted." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). To do so, the Court performs a two-step analysis. See, e.g., Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016). First, the Court "distinguish[es] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). The Court will "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, taking the well-pled facts as true and "drawing all reasonable inferences in the pleader's favor," the Court determines if the facts "plausibly narrate a claim for relief." Id.

## III. Factual Background

The following facts are based upon the allegations in Yiming's amended complaint, D. 16, and are accepted as true for the consideration of the motion to dismiss. Bling Defendants are the controlling members of Bling, a Massachusetts limited liability company "formed for the stated

---

[1] Bling Defendants' motion sought dismissal of Count IV instead of Count III, D. 25, but they later filed an assented-to motion to clarify, D. 30 (which this court now ALLOWS), explaining that, as both parties had recognized in their briefing, this was a typographical error.

[2] The motion also sought dismissal of Count V, but Yiming has voluntarily dismissed this claim against the Bling Defendants. D. 29 at 2 n.1.

purpose of developing and operating a luxurious, state-of-the-art bar, karaoke, and restaurant facility in Malden, Massachusetts." D. 16 ¶¶ 1, 17. Liu and Huang are married and Wang is their cousin. D. 16 ¶¶ 8-9. In June 2013, Defendants Liu and Wang (and two others) incorporated Bling. D. 16 ¶ 17. Liu was Bling's manager. D. 16 ¶ 18. Huang was not identified in Bling's filing papers, but he ran Bling's day-to-day operations and was later identified as its co-manager. D. 16 ¶ 19.

Yiming is a Chinese citizen who was seeking to obtain legal permanent resident status in the United States for himself and his wife through the United States Customs and Immigration Services ("USCIS") EB-5 Program. D. 16 ¶ 20. The EB-5 Program requires an investment of "at least $1 million into an eligible business that is designed to promote job growth in the targeted area," and that the applicant "take an active management role with the business." Id. At some point in 2014, Wang learned "[t]hrough a mutual acquaintance" that Yiming was seeking an eligible business for an EB-5 investment and Wang discussed it with Liu and Huang. D. 16 ¶¶ 22-23. Yiming communicated to Wang that he only wanted to invest in a company that was on strong financial footing and had other EB-5 investors. D. 16 ¶ 25. Wang communicated this sentiment to Liu and Huang. Id.

On or around May 21, 2014, Yiming and his wife met with Wang at Huang's business office. D. 16 ¶ 27. Huang did not participate in the meeting, but Yiming alleges that Huang assisted Wang in preparing for the meeting and was on the premises when the meeting occurred. Id. Wang told Yiming that Huang was running day-to-day operations and would be responsible for the project's management. D. 16 ¶ 29. Yiming asked to speak with Huang, but Wang declined, insisting instead that he represented both Huang and Liu, who knew and approved Wang's statements at the meeting. D. 16 ¶ 31. At the meeting, Wang presented Bling's business plans,

3

stating that "the Project was already sufficiently funded with an aggregate investment of $5 million - $1.5 million from the Bling Defendants combined, an additional $1.5 million from the other two original members, and $1 million each from two other individuals who Mr. Wang represented were EB-5 investors." D. 16 ¶ 28. He told Yiming that the facility was to be completed in December 2014 and that because the project was "nearing its final stages," Yiming's $1 million investment was needed "only to add the final, high-end upgrades" and he would need to invest soon if he wanted to use it for the EB-5 program. D. 16 ¶ 29.

Wang showed Bling's business plan to Yiming, stating it was prepared by Huang and Liu. D. 16 ¶ 30.[3] Yiming alleges the business plan "repeated many of the representations made by Wang verbally during this meeting." Id. The business plan lists Bling's budget as $4,500,000, "which will be sourced from three (3) EB-5 investors"—including Yiming—"each of whom have invested/will invest a minimum of $1,000,000." D. 16-1 at 3, 16-17. It states that the remaining $1.5 million was composed of investments by the four founding members. D. 16-1 at 3, 16-17. Yiming alleges that the business plan also contained financial projections "that were completely made up and lacked any basis in reality or any sort of risk analysis." D. 16 ¶ 34.

Yiming sought legal representation to assist him with his EB-5 application and Wang referred him to Tian and MT Law. D. 16 ¶ 36. These parties had a pre-existing relationship with the Bling Defendants, but agreed to guide Yiming in the immigration petition process and "review all legal documents from the Project." D. 16 ¶¶ 37, 40.

In August 2014, Yiming invested $1 million in Bling and received a five percent ownership interest in the company. D. 16 ¶ 42. Yiming "has since learned" that at the time of his investment,

---

[3] Yiming has attached to the amended complaint a business plan prepared one month later, explaining that it mirrors the original plan "in all material respects" except it includes Yiming as an additional investor. D. 16 ¶ 30; D. 16-1.

the original members had invested only $470,340.39 total, and that of the additional $2 million purportedly invested by EB-5 investors, only one $500,000 investment had been received. D. 16 ¶ 44. Additionally, Huang "later admitted to Yiming [that] the remaining $1.5 million" of these EB-5 investments were not equity investments, but were, instead, loans that Huang and Liu "used to justify Liu's substantial ownership interest and management powers in Bling." D. 16 ¶ 45. Yiming alleges that Huang admitted that Liu and Huang "were responsible for falsely inflating the number, source, and amount of these purported investments and that he was responsible for preparing the Company's business plan." Id. Nevertheless, Bling Defendants submitted documentation to USCIS in September 2014 representing that Bling had been funded with $3.5 million prior to Yiming's investment. D. 16 ¶¶ 50, 52.

Yiming entered into an Escrow Agreement with Bling that required "expressly or implicitly" that the Company would use Yiming's investment "only for construction-related expenses." D. 16 ¶ 53. Instead of using Yiming's investment for construction-related expenses, however, Yiming contends Bling Defendants paid themselves, through "highly suspicious payments" that were "funneled through Bling's operation." D. 16 ¶¶ 54-55. Bling Defendants also fabricated documents such as forged letters by "non-existent investors and distributors" to support Yiming's EB-5 petition and "avoid the repayment obligation to him if the petition failed." D. 16 ¶ 59. For example, in January 2016, Bling provided information to USCIS on Yiming's behalf that falsely represented a forthcoming investment of $3 million. D. 16 ¶ 60. Yiming alleges that, based on Huang's "history with Bling," Huang and Liu's status as co-managers and their signatures on these documents, they "were personally responsible for creating and fabricating these fraudulent documents." D. 16 ¶ 61. In a June 2016 meeting with the Bling Defendants, Huang admitted to Yiming that he created the document detailing the false $3 million investment for the

sole purpose of getting Yiming's petition approved. D. 16 ¶ 64. Yiming alleges that the terms of his investment required Bling to repay him if USCIS denied his immigration petition. D. 16 ¶ 61. Yiming's immigration petition was conditionally approved, but neither he nor his wife have taken further steps to obtain a green card through the EB-5 Program. D. 16 ¶ 73.

Despite initial estimates that work would be completed in December 2014, the "Project remains far from complete, with no work having been performed in nearly a year." D. 16 ¶ 58. Bling Defendants now assert the company's budget needs to double to complete the project. Id. On December 5, 2016, Yiming sent a letter to Bling Defendants demanding an accounting. D. 16 ¶ 65. They refused and instead stated there was a new investor willing to invest in Bling, but only if Yiming would sign a release of claims against Bling Defendants. Id.

### IV. Procedural History

Wang instituted this action on December 22, 2016. D. 1. Wang filed the amended complaint on March 17, 2017. D. 16. On March 29, 2017, Bling filed a petition for Chapter 7 bankruptcy. D. 22; D. 26 at 2 n.1; see In re Bling Entertainment, LLC, No. 17-11058 (Bankr. D. Mass.). In accordance with 11 U.S.C. § 362(a), claims against Bling in this case were automatically stayed pending the bankruptcy proceedings. See D. 22. Bling Defendants have now moved to dismiss all claims against them. The Court heard the parties on the pending motion and took the matter under advisement. D. 39.

### V. Discussion

#### A. Considering a Stay as to Bling Defendants

As an initial matter, Bling Defendants argue the Court must stay this case pending Bling's ongoing proceedings in bankruptcy court. D. 26 at 19. Bling Defendants explain "complete relief cannot be afforded" in Bling's absence—specifically the $1 million rescission Yiming seeks—and embezzlement claims fall upon the Chapter 7 Trustee to investigate. D. 26 at 2-3, 19.

As Yiming notes, however, the stay does not automatically extend to the Bling Defendants under Section 362. See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 969 (1st Cir. 1993) (explaining that Section 362(a)'s automatic stay provisions "apply only to the debtor in bankruptcy"). The Court may, in its discretion, stay certain related proceedings pending the outcome of the bankruptcy proceedings. See Villafañe-Colon v. B Open Enters., 932 F. Supp. 2d 274, 281 (D.P.R. 2013) (granting the motion to stay because most of the allegations in the complaint "directly relate[d]" to the company in bankruptcy, rather than the individual defendants). The Court may consider whether "judicial resources of the parties will be conserved if th[e] case proceeds as a whole, not piece meal." Id.; see City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 99 (1st Cir. 2008). Pending bankruptcy proceedings of a defendant company may justify staying litigation against co-defendants where, for example, the allegations against co-defendants are derivative of claims against the company and allowing the litigation to proceed would be adverse to the interests of judicial economy. See, e.g., Villafañe-Colon, 932 F. Supp. 2d at 281; Celico v. F-Squared Invs., Inc., et al., No. 1:15-cv-12365-PBS (D. Mass.), ECF No. 36, 45, 56, 59.

Although Yiming's claims against Bling Defendants are closely related to his claims against Bling, the Court declines to grant a stay of the proceedings as to the Bling Defendants. The party requesting a stay must "make out a clear case of hardship or inequity in being required to go forward." Steele v. Ricigliano, 789 F. Supp. 2d 245, 248 (D. Mass. 2011) (quoting Landis v. N. Am. Co., 299 U.S. 246, 255 (1936)). As their defenses are not dependent on resolution of claims against Bling and they are named as individual defendants in this case, the Court finds that the Bling Defendants have not done so here.

### B. Claims Sounding in Fraud

When alleging fraud, a pleading party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires the pleader to "allege with particularity the who, what, when, where, and how of the fraud." D'Agostino v. ev3, Inc., 845 F.3d 1, 10 (1st Cir. 2016); see Securities & Exch. Comm'n v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (explaining claims of fraud "must set out the 'time, place, and content of the alleged misrepresentation with specificity'" (quoting Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999)). Rule 9(b) requires a complaint to "specify the statements that the plaintiff contends were fraudulent" and "explain why the statements were fraudulent." Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997). General averments of scienter will be inadequate "unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737)) (emphasis in original). "The particularity requirement of Rule 9(b) serves the purposes of enabling defendants to prepare meaningful defenses to charges of fraud, preventing conclusory allegations of fraud from serving as a basis for strike suits and fishing expeditions, and protecting defendants from groundless charges that may damage their reputations." United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 46 (D. Mass. 2001).

Furthermore, where associated claims are based on allegations that "effectively charge fraud," they also fall within Rule 9(b)'s reach. N. Am. Catholic Educ., 567 F.3d at 15; see Brown v. CitiMortgage, Inc., No. 16-cv-11484-LTS, 2017 U.S. Dist. LEXIS 55946, at *6 n.1 (D. Mass.

8

Apr. 11, 2017); Hallal v. Vicis Capital Master Fund Ltd., No. 12-10166-NMG, 2013 U.S. Dist. LEXIS 39449, at *45-46 (D. Mass. Feb. 25, 2013). Accordingly, whenever "fraudulent misrepresentation is the lynchpin" of the cause of action, Rule 9(b)'s heightened pleading requirements apply. See N. Am. Catholic Educ., 567 F.3d at 14.

Since Yiming's allegations "sound in fraud," they will be judged against the heightened pleading requirements of Rule 9(b). Counts I, II, III, and VI will thus be judged against this heightened pleading standard.[4]

### C. The Contested Claims

#### 1. Fraud (Count III)

"Under Massachusetts law, fraud requires that the defendant made a knowingly false statement concerning a material matter that was intended to, and did in fact, induce the plaintiff's reliance and, through that reliance, created an injury." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 357 (1st Cir. 2013) (citing Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)); see Hisert v. Blue Waters Dredging LLC, No. 16-11960-FDS, 2017 U.S. Dist. LEXIS 94715, at *9-10 (D. Mass. June 20, 2017); Rodi v. S. New Eng. Sch. of Law, 532 F.3d 11, 15 (1st Cir. 2008), cert. denied, 555 U.S. 1175 (2009); Masingill v. EMC Corp., 449 Mass. 532, 540 (2007). "Proof of intent to deceive is not required, so long as there is proof of a false representation of fact susceptible of the speaker's knowledge." Cummings v. HPG Int'l, Inc., 244 F.3d 16, 22

---

[4] Yiming argues Rule 9(b) should not apply to Counts I and II, but the Court disagrees. First, his argument relies exclusively upon cases that are inapposite. See D. 29 at 3 (citing cases discussing ERISA's fiduciary duty obligations). Second, Yiming's listing of examples of conduct pled as factual allegations "supporting the non-fraud counts" that are "separate and apart from the Bling Defendants' fraud," D. 29 at 4, also does not aid his argument. Notably, these factual allegations—embezzlement, self-dealing and falsification of documents—are nearly identical to those he listed as factual allegations supporting his fraud claim. Compare D. 29 at 4 with D. 16 ¶ 83.

(1st Cir. 2001). Additionally, "reliance by the plaintiff must be reasonable." Masingill, 449 Mass. at 540.

Yiming's fraud claim alleges fraud in the inducement. Yiming alleges that Bling Defendants perpetrated a fraud through their knowing misrepresentations regarding the financial status of the company that he relied upon when he decided to invest in the company. D. 16 ¶¶ 79-82.[5] Bling Defendants argue that the count should be dismissed because Yiming has not pled with particularity the circumstances of the fraud. D. 26 at 10-11. Although most of Yiming's allegations are stated in general terms, Yiming's fraud claim survives on the basis of at least two allegations pled in his statement of facts: that Wang stated "the Project was already sufficiently funded with an aggregate investment of $5 million" at the May 2014 meeting, and that Huang and Liu's business plan "contained tables of fabricated financial information that lacked any basis in the Company's actual financial condition." D. 16 ¶¶ 28, 34.

Yiming has stated a claim for fraud as to Wang. He alleges that Wang knowingly misrepresented the amount of funding Bling had received as of May 2014. D. 16 ¶¶ 28. Although Yiming has not pled proof of intent to deceive, Wang's relationship to Huang and Liu, along with Wang's statements that Huang and Liu assisted in preparing Wang for the meeting and that Wang represented them there, D. 16 ¶¶ 28, 31, 45, 48, sufficiently allege that Wang knew of his misrepresentation at the time it was made. Yiming relied upon these misrepresentations to his detriment by investing $1 million in the company. D. 16 ¶ 82. The Court will not resolve the

---

[5] He also alleges they continued to engage in fraud after Yiming's investment through self-dealing and document falsification. D. 16 ¶ 83. Yiming has not pled that he relied upon any alleged fraudulent activity following his investment in the company. Cf. D. 26 at 10. Despite his suggestion otherwise, D. 29 at 5-6, citing "actual fraud" cases, which, unlike this case, involved a cause of action under bankruptcy law in 11 U.S.C. § 523(a)(2)(A), reliance is a required element of fraud claims. Thus, the only false representations that are relevant to this claim are those pre-investment claims, as they are the only claims upon which Yiming could have reasonably relied.

question of the reasonableness of Yiming's reliance at this time, as it is ordinarily a question for the jury. See Monks v. Astoria Bank, No. 16-12084-FDS, 2017 U.S. Dist. LEXIS 85505, at *15 (D. Mass. June 5, 2017).

Yiming's allegations of fraud against Huang and Liu, however, are a closer question. "[W]here there are multiple defendants, the specific role of each must be alleged." Rick v. Profit Mgmt. Assocs., Inc., 241 F. Supp. 3d 215, 224 (D. Mass. 2017). Yiming alleges that Liu and Huang prepared Wang for his meeting, D. 16 ¶¶ 27-28, but preparation for a meeting in which someone else made misstatements does not establish false representations on their parts. Yiming also alleges Liu and Huang fabricated false documentation upon which Yiming relied, but he has not specified where in the business plan or any other document those misstatements may be found. D. 16 ¶ 34; D. 29 at 8. To the extent he alleges the business plan repeats Wang's guarantee that Bling had already received $5 million at that time, D. 16 ¶ 34, it is unclear where in the documents Yiming attached to the amended complaint, see D. 16-2, this statement is repeated. The allegation that Huang later admitted to having inflated the number and source of investments received, D. 16 ¶ 45, does not clarify the contents of the initial alleged misstatement.

Yiming's allegation that the business plan Huang and Liu prepared "contained tables of fabricated financial information that lacked any basis in the Company's actual financial condition," D. 29 at 8; D. 16 ¶ 34, however, provides a plausible basis a fraud claim against them. Revenue projections toe the line between misstatements that are actionable and "puffing" which is not. See, e.g., Shaw v. Dig. Equip. Corp., 82 F.3d 1194, 1217 (1st Cir. 1996), superseded by statute on other grounds. The "corporate puffery rule" generally covers "loose optimism" about future prospects. Orton v. Parametric Tech. Corp., 344 F. Supp. 2d 290, 300 (D. Mass. 2004) (quoting In Re Bos. Tech. Sec. Litig., 8 F. Supp. 2d 43, 54 (D. Mass. 1998)). "The more specific, definite or concrete

11

the outward statement is, however, the greater the likelihood the statement is material and not mere puffery." In re Cytyc Corp. Sec. Litig., No. 02-12399-NMG, 2005 U.S. Dist. LEXIS 6166, at *74 (D. Mass. Mar. 1, 2005). Here, the financial statements that are allegedly falsified and/or baseless, see D. 16-2 at 1-8, are not merely optimistic, or puffing. On the basis of these purported misstatements, then, Yiming's fraud claim survives as to Bling Defendants Huang and Liu as well.

### 2. Breach of Fiduciary Duty (Count I)

Yiming alleges Bling Defendants—as "managers, controlling members, and fellow members of Bling"—owed a duty of utmost good faith and loyalty to Yiming that they breached through their actions of fraud, self-dealing, embezzlement, and mismanagement. D. 16 ¶¶ 70-71. "It is well settled that partners owe each other a fiduciary duty of the utmost good faith and loyalty." Karter v. Pleasant View Gardens, Inc., No. 16-11080-RWZ, 2017 U.S. Dist. LEXIS 50462, at *13 (D. Mass. Mar. 31, 2017) (quoting Meehan v. Shaughnessy, 404 Mass. 419, 433 (1989)). Bling is not a partnership, however, but is rather a limited liability corporation. D. 16 ¶ 10.

Nevertheless, Yiming argues the same duty applies, which is correct if Bling were a closely held corporation. See, e.g., Demoulas v. Demoulas Super Mkts., 424 Mass. 501, 528-29 (1997) (explaining that in Massachusetts, close corporations shareholders owe one another the duty of utmost good faith and loyalty); Zimmerman v. Bogoff, 402 Mass. 650, 657 (1988). In Massachusetts, a closely held corporation is "typified by: (1) a small number of stockholders; (2) no ready market for corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." Demoulas, 424 Mass. at 529 n.34 (quoting Donahue v. Rodd Electrotype Co. of New Eng., Inc., 367 Mass. 578, 586 (1975)). In this context, the duty of "utmost good faith and loyalty" applies to majority and minority shareholders

alike. See Zimmerman, 402 Mass. at 657-58. Although Yiming did not affirmatively plead that Bling is a close corporation, he did plead that this duty applied to Bling Defendants. D. 16 ¶ 70. Bling Defendants did not contest that they owed a fiduciary duty to Yiming. See D. 26 at 8-9. Accordingly, the Court declines to dismiss this claim.

### 3. Civil Conspiracy (Count II)

To establish a claim of civil conspiracy, "a plaintiff must demonstrate that 'a combination of persons [acted] pursuant to an agreement to injure the plaintiff.'" Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 415 (2002) (quoting J.R. Nolan & L.J. Sartorio, Tort Law §99, at 136 (2d ed. 1989)) (alteration in original). Conspiracy may be established as "a form of vicarious liability for the tortious conduct of others." Taylor v. Am. Chemistry Council, 576 F.3d 16, 34 (1st Cir. 2009). "Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." Kurker v. Hill, 44 Mass. App. Ct. 184, 189 (1998).

Here, Yiming has stated a plausible fraud claim as to Bling Defendants and he has provided sufficient factual support in his complaint to support his allegation that Huang and Liu substantially assisted Wang in perpetrating this fraud. D. 16 ¶ 76. Even judged against Rule 9(b)'s more rigorous standard, Yiming's allegations regarding Bling Defendants' professional and personal relationships, D. 16 ¶¶ 10, 17-19, 48, their actions preparing Wang for his meeting with Yiming, D. 16 ¶¶ 27-32, and preparing documents to induce his investment in Bling, D. 16 ¶ 34, 45, are sufficient. The Court thus declines to dismiss this claim.

### 4. Violation of the Securities Act of 1933 (Count VI)

Yiming has alleged that Bling Defendants violated the Securities Act by failing to provide financial disclosures as "required under Regulation D, 17 C.F.R. §§ 230.501-.506" and by "materially and fraudulently misrepresent[ing] the true financial condition of the Company."

13

D. 16 ¶¶ 95-96. Yiming's allegations fail to provide the necessary information to state a plausible claim against the individual defendants here.

The amended complaint does not identify which specific provisions of the Securities Act have supposedly been violated, see D. 16 ¶¶ 94-98, and Yiming fails to provide a cogent basis for Bling Defendants' liability in his opposition to this motion, see D. 29 at 10-13. Assuming that, as the complaint suggests, Yiming bases his Securities Act allegations on Regulation D, 17 C.F.R. § 230.502(b), which establishes information furnishing requirements for private sales of securities to nonaccredited investors, see D. 16 ¶ 95; D. 29 at 11-13, he has failed to provide a basis for its application to individual defendants. Yiming argues that several provisions of the Securities Act render any person who offers or sells a security in violation of the statute individually liable. D. 29 at 11. But it is unclear how the Securities Act provisions Yiming cites for this proposition, id. (citing 15 U.S.C. §§ 77k, 77l, 77o), apply here. Section 11, 15 U.S.C. § 77k, and Section 12, 15 U.S.C. § 77l, apply to public offerings, and § 77o is based upon liability established under Sections 11 and 12. Yiming has not alleged that his investment in Bling was part of a public offering. On the contrary, he has stated that Bling and Bling Defendants were subject to requirements under Regulation D, which governs private offerings. D. 16 ¶ 95; D. 29 at 12.

If, on the other hand, Yiming is alleging the Bling Defendants are liable under the Securities Act's fraud provisions, see D. 29 at 12, Yiming's allegations are also deficient. Yiming argues "Bling Defendants are liable under Section 12 of the Securities Act of 1933 for making misstatements in connection with the sale of securities." Id. First, Yiming did not cite Section 12 in his pleadings. See D. 16 ¶¶ 94-98. Second, it is unclear on what basis Section 12 would apply to these defendants, as private offerings are exempt from Section 12's requirements. See 15 U.S.C. §§ 77d(a)(2), 77l(a)(1). Further, Yiming has made no case for Section 12's application here: he

has not identified the existence of a prospectus, cf. § 77l(a)(2), or provided any suggestion of a "document related to public offerings by an issuer or its controlling shareholders" as required for the application of Section 12(2). See Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995); see also Dietrich v. Bauer, 76 F. Supp. 2d 312, 330 (S.D.N.Y. 1999).

Finally, even if Section 12 did apply, Yiming's allegations of its violation would be deficient under Rule 9(b). "Under First Circuit precedent, claims under §§ 11 and 12(a)(2) that 'sound in fraud' trigger the pleading requirements of Rule 9(b)." In re Brooks Automation Inc. Secs. Litig., No. 06-11068-RWZ, 2007 U.S. Dist. LEXIS 88045, at *45 (D. Mass. Nov. 6, 2007); see Lenartz v. Superconductor Corp., 879 F. Supp. 2d 167, 188 (D. Mass. 2012); In re Sonus Networks, Inc. Secs. Litig., No. 04-10294-DPW, 2006 U.S. Dist. LEXIS 28272, at *17 (D. Mass. May 10, 2006). Yiming fails to provide identification of the specific misstatements relevant to this claim, the documents containing the alleged misstatements, or the speaker at issue with each purported misstatement. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). For all these reasons, the Court dismisses Count VI, the Securities Act claim.[6]

5. *Violation of MUSA, Mass. Gen. L. c. 110A, §101 (Count VII)*

Yiming has alleged that the Bling Defendants have violated MUSA, the Massachusetts blue sky law, Mass. Gen. L. c. 110A, §101, by defrauding Yiming, failing to provide financial disclosures and falsifying Bling's true financial condition. D. 16 ¶¶ 99-102. MUSA states that:

---

[6] The Court has considered the fact that it has now dismissed the Securities Act claim, the federal claim against Bling Defendants. Although the claims against Bling are stayed pending the company's bankruptcy proceedings, the Court still has jurisdiction over the federal claim against Bling and, therefore, retains supplemental jurisdiction over the remaining state claims against Bling Defendants.

15

> [i]t is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Mass. Gen. L. c. 110A, §101. As Yiming points out, D. 29 at 14, MUSA is broadly written, including "indirect" fraudulent activity within its ambit. See Mass Gen. L. c. 110A, §101.

Bling Defendants argue that Yiming's pleading of this Count VII is insufficient under Rule 9(b). D. 26 at 14. The Court need not conduct an inquiry under Rule 9(b), however, because Yiming has pled under a provision that does not provide a right of action. See, e.g., Pearce v. Duchesneau Grp., Inc., 392 F. Supp. 2d 63, 76 (D. Mass. 2005) ("The problem for the plaintiff is that there is no private right of action under Mass. Gen. L. c. 110A, §101"); Fenoglio v. Augat, Inc., 50 F. Supp. 2d 46, 59 (D. Mass. 1999), aff'd, 254 F.3d 368 (1st Cir. 2001) (noting "[c]ourts have consistently held that there is no private right of action under" that provision (citing cases)). This is because "Section 410(a) of that chapter does not specifically provide for a private right of action under [Section 101]," Arent v. Shearson/Am. Express, Inc., 633 F. Supp. 770, 775 (D. Mass. 1985), and subsection (h) provides that the chapter does not create any cause of action not specified in Section 410, see Cabot Corp. v. Baddour, 394 Mass. 720, 723 n.3 (1985) superseded by statute on other grounds in Mass. Gen. L. c. 93A (1987) (explaining that the intent of Section 410(h) "was evidently to preclude the creation of an implied private right of action in §§101 and 102"). Because Yiming has not pled a proper provision of MUSA as the basis for his claim, the Court dismisses this claim. See, e.g., Arent, 633 F. Supp. at 775.

6. *Demand for Accounting (Count VIII)*

The final claim Yiming has pled against Bling Defendants is a demand for accounting of Bling's finances. D. 16 ¶¶ 103-07. Bling Defendants argue Yiming "has no right to demand that

the Bling Defendants, individually, provide him with access to corporate records, much less prepare a corporate accounting for him." D. 26 at 17. They point out that the Massachusetts Limited Liability Company Act, Mass. Gen. L. c. 156C, §10, only provides members of limited liability companies with a right to obtain financial information of the limited liability company from the company itself. D. 26 at 17. Yiming argues, however, that his demand for accounting is equitable and thus broader than the statute cited by Bling Defendants. D. 29 at 14-15; see Henderson v. Axiam, Inc., No. 96-2572-D, 1999 Mass. Super. LEXIS 580, at *182 (June 22, 1999). On this basis, "[t]o state a cause of action for 'accounting,' [a] plaintiff must establish that there was a fiduciary relationship between the parties." Pearson v. Bank of N.Y. Mellon, No. 14-12359-TSH, 2014 U.S. Dist. LEXIS 106457, at *10 (D. Mass. Aug. 4, 2014); see also Chedd-Angier Prod. Co. v. Omni Publ'ns Int'l, Ltd., 756 F.2d 930, 937 (1st Cir. 1985). As discussed above, Yiming has alleged that there was a fiduciary relationship between the parties, D. 16 ¶ 70. His demand for accounting thus remains viable at this time and the Court denies the motion to dismiss as to this claim.

  **D.**   **Bling Defendants' Rule 12(b)(7) Motion**

Bling Defendants argue that all the claims against them should be dismissed for Yiming's failure to join an indispensable party: Yiming's wife, Yumei Zhang. D. 26 at 18-19. "Rule 12(b)(7) provides that 'a defendant may move to dismiss a claim when a plaintiff fails to join a required party.'" J & J Sports Prods., Inc. v. Cela, 139 F. Supp. 3d 495, 499 (D. Mass. 2015) (quoting Phoenix Ins. Co. v. Delangis, No. 14-cv-10689-GAO, 2015 U.S. Dist. LEXIS 31161, at *4 (D. Mass. Mar. 13, 2015)). Bling Defendants, as the moving party, "carr[y] the burden of showing why an absent party should be joined." Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 32 (D. Mass. 2000).

Whether Zhang is an indispensable party is a two-part inquiry. See, e.g., United States v. San Juan Bay Marina, 239 F.3d 400, 405 (1st Cir. 2001); Blacksmith Invs., LLC v. Cives Steel Co., 228 F.R.D. 66, 74 (D. Mass. 2005). The Court must first determine whether Zhang is a necessary party under Rule 19(a) and, if so, then determine whether she is an indispensable party under Rule 19(b). See San Juan Bay Marina, 239 F.3d at 405; J & J Sports, 139 F. Supp. 3d at 504. A party is a necessary party under Rule 19(a)(1)(A) if "in that person's absence, the court cannot accord complete relief among existing parties." Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan, 773 F.3d 1, 13 (1st Cir. 2014). "Relief is complete when it meaningfully resolves the contested matter as between the affected parties." Id. Bling Defendants argue that because Yiming seeks rescission and Zhang received conditional approval of her visa application due to Yiming's $1 million investment in Bling, "complete relief cannot be granted without [Zhang] being subject to the jurisdiction of this Court." D. 26 at 19. Yiming argues first that rescission is not a remedy he seeks as to the Bling Defendants, but rather only applies to Bling itself. D. 29 at 16. Further, Yiming points out that disgorging Zhang of her conditionally-approved visa application is a matter between her and the United States government and not the Defendants. Id.

Zhang is not a necessary party under Rule 19(a). Even if Zhang had not voluntarily abandoned her pursuit of a green card as she did, D. 16 ¶ 73; D. 29 at 16 n.6, Zhang received conditional approval of her visa not from Bling Defendants, but rather from the United States government. Zhang is also not a party to any contract with Bling Defendants or Bling. To the extent that Bling Defendants seek to have the Court consider the expenses they incurred in support of her visa if and when the Court determines a remedy in this case, the Court may do so without

18

joining Zhang as a party.  Thus, the Court denies Bling Defendants' motion to dismiss under Rule 12(b)(7).

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 25, as to Counts VI (Securities Act violation) and VII (MUSA violation), DENIES the motion as to Counts I, II, III and VIII.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge